Angela C. SANDOVAL, Plaintiff–
Appellant,

v.

The ARCHDIOCESE OF DENVER, a cor-
poration Sole, as Owner and Entity in
Control of Holy Family Grade School,
and Diana Bennett, Defendants–Appel-
lees.

No. 99CA1133.

Colorado Court of Appeals,
Div. III.

July 6, 2000.

Stafford & Stafford, L.L.C., John T. Stafford, Jr., Lakewood, Colorado, for Plaintiff–Appellant.

Rothgerber, Johnson & Lyons LLP, Charles Goldberg, Samuel M. Ventola, Scott M. Browning, Denver, Colorado, for Defendants–Appellees.

Kennedy & Christopher, P.C., John R. Mann, Denver, Colorado, for Amicus Curiae Colorado Defense Lawyers Association.

Law Offices of Richard Werner, Richard Werner, Denver, Colorado, for Amicus Curiae Colorado Trial Lawyers Association.

Opinion by Judge DAVIDSON.

While an elementary grade student at a Diocesan school, plaintiff, Angela C. Sandoval, was involved in a four-year sexual relationship with her teacher that ended in 1991. Subsequently in 1998, she filed this action against defendants, the Archdiocese of Denver, a corporation Sole, as Owner and Entity in Control of Holy Family Grade School, and Diana Bennett, former principal of the school, asserting claims of negligence, respondeat superior and ratification, and outrageous conduct. The trial court found that

plaintiff had failed to file her claims within the two-year limitations period set forth in § 13–80–102(1)(a), C.R.S.1999, and thus granted defendants' motion for summary judgment and dismissed the complaint against these defendants. Plaintiff appeals from that judgment, and we affirm.

Summary judgment is a drastic remedy and should only be granted if there is a clear showing that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. *See Compass Insurance Co. v. City of Littleton,* 984 P.2d 606 (Colo.1999). Our review is de novo. *Aspen Wilderness Workshop, Inc. v. Colorado Water Conservation Board,* 901 P.2d 1251 (Colo.1995).

## I.

■ Plaintiff's primary contention on appeal is that the trial court erred when it determined that her claims were barred by the two-year statute of limitations. To the contrary, plaintiff argues, because her civil action was based on a sexual assault committed by defendants' employee, her claims were governed by § 13–80–103.7, C.R.S.1999, which provides a six-year statute of limitations for victims of a sexual offense. We disagree.

## A.

Originally, civil claims brought by a victim of sexual assault were governed by the various general limitations statutes, the terms of which had been shortened in the General Assembly's extensive tort reform in 1986. In 1990, however, the General Assembly carved out an exception by enacting § 13–80–103.7, which consolidated "any civil action[s] based on a sexual assault or a sexual offense against a child" under a six-year statute of limitations. The limitations period commenced when a claim for relief accrued or, if the victim was "under a disability," when the disability was removed. A person "under disability" was defined pursuant to § 13–81–101(3), C.R.S.1990, as, for example, a minor under age eighteen.

In 1993, the General Assembly determined that a victim could also be "disabled" by a suppressed memory caused by the psychological and emotional trauma of a sexual assault by someone with whom the victim had a special relationship. Thus, it amended the statute alternatively to allow victims subjected to sexual abuse six years from the date their memory surfaced to pursue a civil action. Hearings on H.B. 1259 before the House Judiciary Committee, 59th General Assembly, First Session (February 11, 1993). *See also* Hearings on H.B. 1259 before the Senate Judiciary Committee, 59th General Assembly, First Session (March 10, 1993); *cf. Sailsbery v. Parks,* 983 P.2d 137 (Colo.App. 1999).

As amended, § 13–80–103.7 provides, in relevant part:

(1) Notwithstanding any other statute of limitations ... any civil action based on ... a sexual offense against a child shall be commenced within six years after a disability has been removed for a person under disability, as such term is defined in subsection (3.5) of this section, or within six years after a cause of action accrues .... Nothing in this section shall be construed to extend the statutory period with respect to vicarious liability.

. . . .

(3.5)(a) [P]erson under disability also includes a victim of a sexual assault when the victim is in a special relationship with the perpetrator of the assault ... and where the victim is psychologically or emotionally unable to acknowledge the assault or offense and the harm resulting therefrom. For the purpose of this subsection (3.5), "special relationship" means a relationship between the victim and the perpetrator of the sexual assault which is a confidential, trust-based relationship, such as ... teacher-student .... [A]s elements of the cause of action, a person under disability ... shall have the burden of proving that the assault or offense occurred and that such person was actually psychologically or emotionally unable to acknowledge the assault ... and the harm resulting therefrom....

## B.

The dispositive issue here is whether the phrase, "any civil action 'based on' a sexual offense," restricts application of the extended limitations period to claims brought against a perpetrator or encompasses related claims raised against third parties. We hold that the statute of limitations set forth in § 13–80–103.7 does not apply to claims against parties other than a perpetrator of a sexual offense.

■ Statutory construction is a matter of law to be decided by the court. *Itin v. Bertrand T. Ungar, P.C.,* 978 P.2d 142 (Colo. App.1998).

■ Our primary task in interpreting a statute is to give it a construction and interpretation that will render it effective in accomplishing the purpose for which it was enacted. *See Civil Service Commission v. Pinder,* 812 P.2d 645 (Colo.1991). It must be read and considered as a whole, and construed to give consistent, harmonious, and sensible effect to all of its parts. *See United Airlines, Inc. v. Industrial Claim Appeals Office,* 993 P.2d 1152 (Colo.2000).

■ We look first to the plain language of the text. *See State v. Nieto,* 993 P.2d 493 (Colo.2000). If, however, the General Assembly's intended meaning of a phrase is doubtful, the court should consider the language in the context of the statute and by reference to the meaning of words associated with the word or phrase at issue. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995). And, if the statutory language lends itself to alternative constructions and its intended scope is unclear, a court also may look to pertinent legislative history to determine the purpose of the legislation. *See Fishburn v. City of Colorado Springs,* 919 P.2d 847 (Colo.App. 1995).

### 1.

Plaintiff contends that the term "based on" should be read alone and given its literal meaning. Thus, because her claims arose from the factual circumstances of the sexual offense by defendants' employee, plaintiff argues that the extended limitations period applied. Indeed, some jurisdictions have accepted a similar argument. *See Werre v. David,* 275 Mont. 376, 913 P.2d 625 (1996) (because the claim against her stepfather was the starting point or foundation, negligence claim against mother was actionable); *C.J.C. v. Corporation of Catholic Bishop,* 138 Wash.2d 699, 985 P.2d 262 (1999) (claims of negligence can be considered a subset of intentional sexual abuse; absent the abuse, victim would not have suffered any injury and the negligence claims could not stand).

In support of her position, plaintiff asserts that the 1993 amendment focused on a victim's repressed memory disability. Hence, she argues, the General Assembly intended a "harms-based" statute that would broaden the victim's remedies by extending the time frame in which she or he can identify not only a perpetrator but also third parties responsible for the abuse. In support of this reasoning, she cites *Almonte v. New York Medical College,* 851 F.Supp. 34 (D.Conn. 1994) (statutory focus is on actions flowing from a particular type of harm, and not parties; such a harm-based approach is consistent with the legislative intent to afford a plaintiff sufficient time to recall and come to terms with traumatic childhood events).

Defendants, however, contend that *Werre, C.J.C.,* and *Almonte* are inapposite because the underlying statutes in those cases, unlike here, encompass claims for damages for "injuries suffered as a result of" a sexual assault.

Instead, here, § 13–80–103.7, C.R.S.1999, links the type of claims to which it applies to offenses listed in the criminal code. *See* §§ 13–80–103.7(2) and 13–80–103.7(3), C.R.S. 1999. That language, defendants assert, restricts the scope of § 13–80–103.7 to civil claims "based on" the act of the perpetrator of a sexual assault or offense, such as assault, battery, intentional infliction of emotion distress, or breach of fiduciary duty.

Some state courts which have statutes similar to Colorado's have so held. *See Kelly v. Marcantonio,* 678 A.2d 873 (R.I.1996) (the only intended legislative target is the person who at the time of the abuse would have been subject to criminal prosecution, and does not include his employer unless employ-

er would also have had criminal liability); *Debbie Reynolds Professional Rehearsal Studios v. Superior Court*, 25 Cal.App.4th 222, 30 Cal.Rptr.2d 514 (1994) (plaintiff may seek recovery for any act committed by a defendant that would have been proscribed by specified penal code sections; thus, recovery excluded for defendants who are alleged to have contributed to plaintiff's damages by negligence).

Defendants point out that, four years after *Debbie Reynolds* was decided, California amended its statute expressly to provide that it applies to "an action for liability against any person or entity who owed a duty of care to the plaintiff, where a wrongful or negligent act by that person or entity was the legal cause of the childhood sexual abuse which resulted in the injury to the plaintiff." Cal.Civ.Proc.Code § 340.1(a)(2) (West 1999). Importantly, defendants explain, § 13–80–103.7 contains no similar provision.

Further, defendants argue that while a claim against a perpetrator is necessarily "based on" a sexual assault regardless of the specific legal theory asserted, a claim, such as alleged here against the perpetrator's employer for negligent hiring or supervision, is not. Rather, it is based on the employer's negligence in selecting or supervising a servant or employee.

Again citing *Debbie Reynolds*, defendants also argue that public policy favors this reading of the statute because application of the extended period to ancillary claims would create a potential for unlimited exposure to liability without culpability for intentional conduct.

We conclude that both plaintiff's and defendants' interpretations are plausible: As it precedes the terms "sexual assault" or "sexual offense against a child," the phrase "based on" may be read to refer to the underlying factual circumstances of that sexual assault or offense or, on the other hand, can be read to reference only the perpetrator's act of sexual misconduct. Thus, in and of itself, the phrase is ambiguous. *See State v. Nieto, supra* (where the words chosen by the General Assembly are capable of two or more constructions leading to different results, the statute is ambiguous).

**2.**

We also conclude, however, particularly when viewed within the context of the entire statute, that the term "based on" encompasses only those civil claims brought against the perpetrator arising from his or her sexual assault or offense.

**a.**

First, we agree with defendants that the references to the criminal code to define "sexual assault" and "sexual offense," *see* §§ 13–80–103.7(2) and 13–80–103.7(3), are highly significant and indicate that the General Assembly intended that the act upon which claims must be based is that of a perpetrator and not the negligence of a non-complicitous third party. As relevant here, the offenses listed in § 18–3–411 do not include negligently allowing an offense to happen or placing a perpetrator in a position to commit a sexual offense against a child.

Indeed, as defendants point out, their alleged negligent hiring or supervision was no more "based on" the subsequent sexual assault than would a claim of legal malpractice be "based on" a fraud later committed by someone else as a result of that malpractice. Thus, in the latter example, the statute of limitations would be that applicable to malpractice, not to fraud. *See Bradley v. Guess*, 797 P.2d 749 (Colo.App.1989), *rev'd on other grounds sub nom. Seaward Construction Co. v. Bradley*, 817 P.2d 971 (Colo.1991) (when negligence claim is "based on" an assault and battery, statute of limitations for negligence, rather than statute for assault and battery claim, applies). *See also C.J.C. v. Corporation of Catholic Bishop, supra* (Durham, J., dissenting) (although true that negligence claims would be baseless if plaintiff had not been molested because she then would not have been harmed, negligence claims were not "based on" intentional tort but rather on third parties' failure to prevent the tort).

Moreover, as quoted above, the last sentence of § 13–80–103.4(1) expressly does not permit application of its six-year limitation

period to derivative claims involving "vicarious liability."

■ This is significant because a vicarious liability claim against an employer under respondeat superior is based entirely on the acts or omissions of the employee, *see Arnold v. Colorado State Hospital*, 910 P.2d 104 (Colo.App.1995), and, generally, the liability of an employee becomes the liability of the employer as well. *See Gallegos v. City of Monte Vista*, 976 P.2d 299 (Colo.App.1998) (a finding that an employee is not negligent requires a finding that the employer is not legally responsible).

Hence, without the limiting language, a claim involving a sexual assault or offense of a perpetrator, under a vicarious liability theory, could arguably have been brought against the perpetrator's employer under the extended limitations period set forth in the statute. The explicit exclusion from the statute of a claim which theoretically could have imposed liability on a third party, however, confirms that the six-year statute of limitations is to apply only to the perpetrator of the sexual assault.

Consistent with this, another section of the statute, § 13–80–103.7(3.5), enumerates several examples of a confidential, trust-based relationship that may constitute a "special relationship," including that of physician-patient, which give rise to the extended limitations period. According to the statute, a victim of a sexual assault committed by a physician within the context of the practice of medicine can continue to choose to seek damages under a theory of medical malpractice, governed by the two-year limitations period under § 13–80–102.5, C.R.S.1999. Alternatively, the victim may file his or her civil claims under the provisions of § 13–80–103.7, which allow a longer period.

Significantly, however, § 13–80–103.7(5) excludes from its purview any claim alleging negligence in the course of providing professional services in the practice of medicine. *See Perez v. Witham*, 1 P.3d 262 (Colo.App. 1999) (because it is the alleged sexual assault in the providing of medical treatment that forms the basis of plaintiff's claim for negligence, under the "unless" clause of the second sentence of § 13–80–103.7(5), the six-

year limitation period remains inapplicable). And, the provision is directed only to the physician as perpetrator.

In addition, the statute attributes a victim's delayed memory to the trauma of a sexual assault by the perpetrator who has such "special relationship" with the victim. Consequently, to bring a claim for relief under § 13–80–103.7(3.5), a plaintiff must prove that the assault occurred and that a special relationship with the perpetrator rendered the plaintiff psychologically or emotionally unable to acknowledge the abuse. It does not make sense to interpret this provision as contemplating a third party as a defendant to these allegations.

Similarly, § 13–80–103.7(3.7), C.R.S.1999, prohibits the bringing of an action pursuant to § 13–80–103.7(3.5) if the defendant is deceased or is incapacitated to the extent that the defendant is incapable of rendering a defense to the action. This can only be a reference to the perpetrator.

b.

Our conclusion that the two-year statute of limitations applies is consistent with the statute's legislative history.

In 1990, the General Assembly recognized that many victims of sexual assault did not acknowledge the extent of their injury for, on average, nine years and, consequently, the two-year limitation period on their claims did not afford the victim a meaningful time to be heard.

In the discussion of House Bill 90–1085, its sponsor emphasized that a six-year limitations period would enable the victim not only to recover the benefits of a judgment but also to provide a sense of vindication against the perpetrator. The sponsor concluded that the statute would "send a message to the perpetrators" that they will "not easily be let off the hook." This statement reflected the focus of the entire debate; every reference to "the defendant" identified that individual as the perpetrator of the sexual assault. Hearings on H.B. 90–1085 before the House Judiciary Committee, 57th General Assembly, Second Session (January 18, 1990).

The statute was amended in 1993 principally to accommodate a victim's repressed memory disability. However, as initially proposed, House Bill 93–1259 also attempted to clarify the type of claims that would be subject to the longer period of limitations. It read:

[A]ny civil action based on ... a sexual offense against a child, WHETHER THE CIVIL ACTION IS BASED ON NEGLIGENT OR INTENTIONAL ACTS OR OMISSIONS....

■ As discussed, the focus of debate was on the perpetrator. Thus, it appears from the discussion that this amendment was proposed under a misapprehension that there could be a claim against a perpetrator for "negligent" sexual abuse. However, the perpetrator of a sexual assault commits an intentional act, and no claim for negligence can, as a matter of law, be asserted against him or her. *See Allstate Insurance Co. v. Troelstrup,* 789 P.2d 415 (Colo.1990) (an intent to harm must, as a matter of law, be inferred from a sexual assault); *Nikolai v. Farmers Alliance Mutual Insurance Co.,* 830 P.2d 1070 (Colo.App.1991) (if complaint alleges a sexual assault, the law implies an intent to harm, even though a claim based on negligence is pleaded). Therefore, the proposal to include civil actions based on negligence, if added, would necessarily have to have been read to bring claims against third parties within the purview of the statute.

During the Senate debate, however, the bill's sponsor termed this amendment language "troubling" and moved to delete it. The motion passed unanimously. Senate Journal, 59th General Assembly, First Session (May 11, 1993) at 1415, 11.14–18. Moreover, later debate reaffirmed the concern that incorporation of "negligence" inadvertently would have allowed, for example, a negligence claim against "grandma" for illegal acts committed by "grandpa" decades earlier. Senate Floor Debate on Amendments to H.B. 93–1259, 59th General Assembly, First Session (May 11, 1993).

This discussion emphasized that, in contrast to a third party who, through negligence, may have contributed to the harmful circumstances, the psychological and emotional defense mechanisms adopted by a victim were the responsibility of the defendant who intentionally had caused the harm. As stated by the amendment's sponsor:

[I]t is the perpetrator that is the cause of the repressed memories. It's because the perpetrator threatened the child that they will either commit suicide ... if the person reveals what happens, threatens the child that the family will break up, or threatens to kill the child if they say something.

Senate Floor Debate on Amendments to H.B. 93–1257, 59th General Assembly, First Session (May 11, 1993).

*See Sailsbery v. Parks, supra* (discussing *Cassidy v. Smith,* 817 P.2d 555 (Colo.App. 1991) as the decision which preceded and apparently prompted the enactment of § 13–80–103.7).

3.

In sum, although plaintiff's argument has intuitive appeal, we are convinced that it was the intent of the General Assembly that the six-year statute of limitations for actions "based on" a sexual assault or offense be limited to those brought against the perpetrator. Consequently, we construe the statute accordingly. *See Farmers Insurance Exchange v. Bill Boom, Inc.,* 961 P.2d 465 (Colo.1998) (task of court is not to make policy, but to effectuate the intent of the General Assembly).

II.

Next, plaintiff contends that the trial court erred in granting summary judgment because the statute of limitations was tolled by defendants' destruction of material evidence. We are not persuaded.

■ The limitation period does not begin to run until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, the existence of facts forming the basis of a claim for relief. *First Interstate Bank v. Piper Aircraft Corp.,* 744 P.2d 1197 (Colo.1987). Moreover, in order for a statute of limitations to be tolled because of equitable considerations, it is the plaintiff's burden to establish that the defen-

dant's actions prevented her from filing a timely claim. *Samples–Ehrlich v. Simon,* 876 P.2d 108, (Colo.App.1994).

 Here, plaintiff does not dispute that all three of her claims for relief accrued on February 5, 1992, when she reached the age of majority. At that time, plaintiff had knowledge of sufficient facts to form the basis of her claims, in that she had engaged in a sexual relationship with the teacher and was aware that she had suffered damages. She also knew that the teacher was employed by the school, the school was operated by the Archdiocese, and Bennett was the school principal. Further, plaintiff knew, or with the exercise of reasonable diligence should have known, of any likelihood that defendants' hiring and supervision of the teacher contributed to the harmful circumstances of her assault.

Even if we assume that it had occurred, plaintiff has not shown how any concealment or destruction of some arguably useful evidence interfered with her ability to know of her injury and its cause. Moreover, information which plaintiff alleged that she discovered only after the suit was filed—for example, the principal's statement during discovery that she had observed the teacher's efforts to help plaintiff with school work and personal problems but did not conclude that the contact rose to the level of misconduct—appears to do little to substantiate any of plaintiff's claims. *See* Restatement (Second) of Torts § 317 comment c (1965) (master may subject himself to liability by retaining servants who, to his knowledge, are in the habit of misconducting themselves in a manner dangerous to others); *see also Destefano v. Grabrian,* 763 P.2d 275 (Colo.1988).

We conclude that the trial court correctly determined that plaintiff did not present evidence sufficient to create a material issue of fact that the statute of limitations should have been tolled.

### III.

Plaintiff also contends that the trial court erred in denying her request for additional time to conduct discovery and in failing to rule upon her motion to compel prior to ruling on the summary judgment motion. We disagree.

 In order to avoid the precipitous and premature grant of a summary judgment, C.R.C.P. 56(f) affords to the non-moving party an extension of time for the purpose of seeking additional evidence before the trial court rules on the motion. *DuBois v. Myers,* 684 P.2d 940 (Colo.App.1984). A reasonable continuance for discovery purposes may be ordered if it appears that summary judgment would be premature absent the opportunity to conduct this discovery. *See Sundheim v. Board of County Commissioners,* 904 P.2d 1337 (Colo.App.1995), *aff'd,* 926 P.2d 545 (Colo.1996).

The record indicates that the court did grant plaintiff an extension, although plaintiff argued that the time was insufficient. Even so, here, summary judgment was granted as a result of plaintiff's failure to file the action within the applicable statute of limitations. And, as plaintiff has not demonstrated that any discovery related to certain witnesses or documents would have precluded that judgment, we find no abuse of discretion in the trial court's actions.

### IV.

 Plaintiff contends that the trial court erred in denying her motion to amend the complaint allowing additional claims for relief against defendants. We disagree.

 Leave to amend a pleading is a matter left to the sound discretion of the trial court. C.R.C.P. 15(a). In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice to the opposing party, and futility of the amendment—the leave sought should, as the rules require, be freely given. *See Polk v. Denver District Court,* 849 P.2d 23 (Colo.1993).

 The movant carries the burden of demonstrating that lack of knowledge, mistake, inadvertence, or other reason for having not stated the amended claim earlier. *Gaubatz v. Marquette Minerals, Inc.,* 688 P.2d 1128 (Colo.App.1984).

Here, the month following defendants' motion for summary judgment, plaintiff moved to add a third-party beneficiary claim against Bennett and the Archdiocese, a claim for breach of fiduciary duty and a federal claim under Title IX against the Archdiocese, and a federal civil rights claim against certain individuals who had been employees of the Denver Department of Social Services (Department). Plaintiff stated that she first learned of the Archdiocese's insurance policy, upon which she based the putative beneficiary claim, during discovery. Plaintiff offered no explanation for the delayed fiduciary duty and federal claims.

The trial court found that the claims could and should have been raised earlier than ninety days prior to trial. The court concluded that to inject the claims at that late date would unduly complicate and delay the case and would inflict incurable prejudice upon defendants. In light of these findings, we cannot say that the trial court abused its discretion.

Moreover, the claims raised by plaintiff in her second amended complaint were already barred at that time by the applicable statutes of limitations. *See* § 13–80–101(1)(f), C.R.S. 1999 (claim for breach of fiduciary duty subject to three-year limitation); § 13–80–101(1)(a), C.R.S.1999 (claim for breach of contract subject to three-year limitation); § 13–80–102, C.R.S.1999 (claims brought under the federal statutes are subject to a two-year limitations period).

### V.

Finally, plaintiff contends that the trial court erred in failing to award her reasonable attorney's fees and costs incurred in response to defendants' designation of nonparties because these parties were dismissed after discovery established that the designation was without merit. We disagree.

A defendant has a right to seek contribution from a joint tortfeasor for the amount the defendant pays in excess of his or her pro rata share of liability for the same injury rendered to the plaintiff. Section 13–21–111.5, C.R.S.1999; *see Graber v. Westaway*, 809 P.2d 1126 (Colo.App.1991). To designate a potentially liable nonparty, a defendant must file a pleading setting forth, among other things, a brief statement of the basis for believing such party is at fault. *See Thompson v. Colorado & Eastern R.R. Co.*, 852 P.2d 1328 (Colo.App.1993).

Here, defendants moved to designate plaintiff's parents, the Denver Department of Social Services, and the perpetrator's employment references as non-parties at fault. Defendants believed that the parents were wholly or partially at fault for plaintiff's injuries because they knew about the continuing sexual relationship before defendants knew or should have known of it after the perpetrator left defendants' employ; that the Department failed to act on the principal's report of possible sexual abuse; and that, to the extent the perpetrator was found to have flawed qualities for her teaching position, the professional and character references bore some responsibility for defendants' hiring decision.

While plaintiff moved to strike the designation, she also recognized that discovery might yield facts which would support an amendment to the complaint and, thus, alternatively moved to add the Department and the references as defendants.

Accordingly, at the time of designation defendants had no duty to produce evidence that the non-parties were, indeed, negligent. To the contrary, defendants provided sufficient support for their belief that others contributed to plaintiff's injury.

The judgment is affirmed.

Chief Judge HUME and Judge ROY concur.