**ROMAN CATHOLIC BISHOP OF LOUISVILLE, Appellant,**

v.

**Kyle BURDEN, Appellee.**

**No. 2004–CA–000086–MR.**

Court of Appeals of Kentucky.

Dec. 10, 2004.

Reconsider Denied Jan. 26, 2005.

Discretionary Review Denied by Supreme Court Aug. 17, 2005.

Edward H. Stopher, Raymond G. Smith, Boehl Stopher & Graves, LLP, P. Kevin Ford, Ford Klapheke & Meyer, Louisville, KY, for appellant.

Wallace N. Rogers, Mulhall, Turner, Coombs & Malone, PLLC, Louisville, KY, for appellee.

Before COMBS, Chief Judge; GUIDUGLI and SCHRODER, Judges.

## OPINION AND ORDER

GUIDUGLI, Judge.

In 2002, Kyle Burden filed suit against the Roman Catholic Bishop of Louisville (hereinafter "the Archdiocese") seeking damages for its actions, or lack of action, concerning sexual abuse by Father Daniel Clark, a priest who worked for the Archdiocese in the early 1980s. The Archdiocese has appealed from the Jefferson Circuit Court's November 13, 2003, Opinion and Order denying its motion for summary judgment and from the December 6, 2003, order denying its motion to alter, amend or vacate the previous ruling. Because we have determined that this appeal was taken from a non-final, non-appealable order, we are constrained to dismiss the appeal.

In 1982, Burden claims to have been sexually molested by Father Clark after being injured in a church-sponsored softball game. Years later, Burden learned that the Archdiocese had failed to report Father Clark's abuse of various children or to inform students and parents, and otherwise concealed the sexual abuse. Burden filed suit against the Archdiocese in 2002, alleging negligence or gross negligence in the hiring of Father Clark as a priest/administrator at St. Rita's and in failing to take any disciplinary action against him, to inform the students and parents, and to report the incidents to state authorities. As a result of the Archdiocese's conduct, Burden claims to have suffered serious mental distress as well as physical and mental pain and suffering, and will incur expenses for psychological care and treatment. He requested both compensatory

and punitive damages. The Archdiocese filed an answer, in which it raised several affirmative defenses.

■ Prior to filing its answer, the Archdiocese filed a motion to seal the record, citing KRS 413.249(3) and attaching the affidavit of Senator Tom Buford, who introduced the Senate Bill that was the predecessor to KRS 413.249. The Courier–Journal moved to intervene in order to oppose the motion to seal, arguing that KRS 413.249 was unconstitutional on its face and that it did not apply to this type of case. By this time, many similar cases arising from the alleged cover-up of sexual abuse by priests or employees of the Archdiocese had been filed in Jefferson Circuit Court, which cases were assigned to several different divisions. The Jefferson Circuit Court created a Master File in Division 2, and consolidated all pending and subsequently filed suits in Division 2 for purposes of adjudicating the constitutionality of KRS 413.249 and of overseeing general discovery. Also in the Master File, the Courier–Journal's motion to intervene was granted, a briefing schedule was instituted, and oral arguments were scheduled. The record in Burden's suit, which was assigned to Division 10, contains all of the relevant motions, responses and orders. On July 11, 2002, Division 2 issued an Opinion and Order denying the motions to seal that had been filed in the various lawsuits. The Opinion and Order provided, in relevant part, as follows:

### I. APPLICABILITY OF KRS 413.249

It is the position of the Plaintiffs, Intervening Plaintiff and the Office of the Attorney General that the statute is inapplicable to the Archdiocese. They contend that the language of the Kentucky statute differentiates it from other states['] statutes, in that it specifically refers to "the . . . defendant," and sets forth the crimes for which such a perpetrator may be prosecuted. They argue that the Church, as a body, cannot commit any of these acts and be deemed a perpetrator.

While the Defendant argues that Illinois, Connecticut and Vermont have similar statutes that have been applied to third parties, the Plaintiffs and Intervening Plaintiff[ ] contend that those statutes and the cases interpreting them are different from those adopted in this Commonwealth. It is their position that the language employed herein is more similar to that used in Rhode Island, California, and Colorado, where courts have declined to apply such statutes to third parties.

In *Hobert v. Covenant Children's Home*, 309 Ill.App.3d 640, 723 N.E.2d 384 (2000), the Illinois Court extended the application of the statute of limitations in actions, "for damages for personal injury based on childhood sexual abuse," to third parties, holding that an extended limitations period is necessary in such cases due to the problem of repressed memory. In *Nutt v. Norwich Roman Catholic Diocese*, 921 F.Supp. 66 (D.Conn.1995), the Court also applied the limitations period to actions against third parties. Similarly, in *Sabia v. Vermont*, 164 Vt. 293, 669 A.2d 1187 (1995), the Court also held that the extended limitations period could be extended to suits against a third party. However, the Court therein did not address the issue of sealing the records, although there is a similar provision in Vermont's statute.

In *Kelly v. Marcantonio*, 678 A.2d 873 (1996), the Supreme Court of Rhode Island examined that state's statute regarding childhood sexual abuse and held that the statute in question does not apply to non-perpetrators. The Court

reasoned that since only a perpetrator could have been convicted of the offenses set forth in the statute, the legislative intent expressed therein was to extend the applicable limitations period against such an individual. The Court concluded that if the legislature had wished to include causes of action against a third party, it could have drafted the statute to clearly reflect that intention. Similarly, in *Sandoval v. Archdiocese of Denver*, 8 P.3d 598 (2000), the Court held that the references to criminal statutes in the limitations statute, "... are highly significant and indicate that the General Assembly intended that the act upon which claims must be based is that of a perpetrator and not the negligence of a non-complicitous third party." Id. at 602. Also in *Debbie Reynolds Professional Rehearsal Studios v. The Superior Court of Los Angeles County*, 25 Cal.App.4th 222, 30 Cal.Rptr.2d 514 (1994), the Court held that, "... the Legislature, in defining what constitutes sexual abuse, referred to the criminal statutes to make clear that childhood sexual abuse is an intentional rather than a negligent act." Id. at 232.

This Court has reviewed the statutes involved in the above-cited competing cases. The distinction in the various interpretations of the courts appears to lie in the amount of specificity utilized in drafting the statutes. Kentucky's statute details the offenses which constitute "childhood sexual assault" and "childhood sexual abuse." Colorado and California also set out specific statutes from their respective criminal codes. Rhode Island merely sets forth the chapters of its code in which statutes constituting such offenses may be located. Illinois's definition totally lacks specificity. It states that childhood sexual abuse, "... includes *but is not limited to* sexual conduct and sexual penetration as de-

fined in Section 12–2 of the Criminal Code of 1961." Thus, while the statutory offenses are included, it implies that other conduct may constitute abuse as well. Such language leaves the question of against whom a civil action may be brought in doubt. Therefore, the Illinois Court's conclusion that third parties are excluded from the application of the statute is well-founded based upon the vagary (sic) of the legislature's drafting. Similarly, Vermont's statute is lacking in specificity in that it defines childhood sexual abuse as conduct which, "... would have constituted a violation of a statute ...".

The Court held in *Commonwealth v. Allen*, Ky., 980 S.W.2d 278 (1998)[,] that a statute may not be interpreted contrary to the stated language and that legislative intent must be interpreted from the language employed. Affidavits such as those of Senator Tom Buford, setting forth his individual opinions, rather than the language adopted by the group as a whole are of little value. The Court noted in *Commonwealth, Revenue Cabinet v. Cope*, Ky., 875 S.W.2d 87 (1994), "This Court is often without benefit of a substantial legislative history as we undertake to construe statutes or test their constitutionality," id. at 90; see also *St. Luke Hospital v. Health Policy Bd.*, Ky.App., 913 S.W.2d 1 (1996). Section 2 of the original Senate Bill 53 states that the statute is to be given retroactive effect, "... to provide uniform justice to the victims of sexual offenses who were children when the offenses occurred." Thus, it is clear that the focus of the General Assembly was on "victims" rather than those whom the "victims" might attempt to hold liable for abuse. However, the language of KRS 413.249, just as that used by the legislatures of Rhode Island, Colorado and California, appears to be directed at perpetrators and not third par-

ties since it sets forth sexual offenses which a third party, such as a church or a school would be incapable of committing. Based on the foregoing, it is the Opinion of this Court that KRS 413.249 does not apply to the cases currently before the Court.[1]

Although the circuit court in the Master File specifically did not order consolidation on all of the motions to seal, we must assume that this Opinion and Order applied to Burden's suit because there is no other ruling in the record and the record is not sealed.

In 2003, Burden moved the circuit court in Division 2 to transfer his case back to Division 10 where it was originally assigned because he no longer needed to be involved in the consolidated discovery process and wished to obtain a trial date. This motion was denied, but the circuit court granted him leave to refile after August 1, 2003. Burden then moved the circuit court in Division 2 to enter an order allowing him to opt out of the class action settlement and proceed with his case outside of the class action activities. This motion was granted, and Burden's suit was later transferred back to Division 10 for further proceedings on the Archdiocese's motion.

Shortly after the transfer, the Archdiocese filed a motion for summary judgment, arguing that the statute of limitations barred Burden's claim under either KRS 413.249 or KRS 413.140. Following the filing of a response and two replies, the circuit court entered an Opinion and Order denying the Archdiocese's motion for summary judgment. Regarding the application of KRS 413.249, the circuit court stated as follows: "It has already been established that KRS 413.249 applies to the Archdiocese according to the origi-

nal complaint. Thus, since Burden did not file his claim until 2002, pursuant to KRS 413.249, the statute had run." The circuit court then went on to address the general one-year statute of limitations in KRS 413.140, this Court's opinion in *Roman Catholic Diocese v. Secter*,[2] as well as the tolling provision contained in KRS 413.190. After determining that the one-year statute of limitations was tolled under *Secter*, the circuit court held that there was a question of fact as to when Burden was put on notice that he had a claim against the Archdiocese. Although the motion for summary judgment was denied, the Opinion and Order contained CR 54.02 finality language. The Archdiocese then filed a motion to alter, amend or vacate, which the circuit court denied in an Opinion and Order that focused on the tolling provision. This appeal followed.

In its brief, the Archdiocese raises two issues as to why it was entitled to a summary judgment. First, the Archdiocese argues that the tolling provisions of KRS 413.190 do not apply to KRS 413.249, and second, that even if KRS 413.140 were to apply, the one-year limitations period began to run in 1988 and thus Burden's claim was time barred. On the other hand, Burden argues that the appeal was taken from a non-final order because the order denying the motion to alter, amend or vacate did not itself contain any finality language. Burden also argues that KRS 413.249 does not operate as a statute of limitations in the present case and that the general statute of limitations of KRS 413.140 does not bar his claim. In its reply brief, the Archdiocese responded to Burden's arguments concerning finality and the application of KRS 413.249.

The only issue we need to address in this case is the finality issue

1. We believe this to be a proper interpretation of the applicable law.

2. Ky.App., 966 S.W.2d 286 (1998).

raised in Burden's brief, although we shall do so from a different perspective. In this case, the Archdiocese has appealed from the *denial* of its motion for summary judgment. It is well settled in this Commonwealth that the denial of a motion for summary judgment is interlocutory and is not appealable.[3] In *Leneave*,[4] this Court held: "The general rule under CR 56.03 is that a denial of a motion for summary judgment is, first, not appealable because of its interlocutory nature and, second, is not reviewable on appeal from a final judgment where the question is whether there exists a genuine issue of material fact." There is, however, an exception to this general rule, which was also addressed in *Leneave*: "The exception applies where: (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom."[5] Because there has not yet been a final judgment entered in this case from which an appeal was taken, this exception has no application here.

By its very nature, the denial of the motion for summary judgment is interlocutory. Furthermore, the inclusion of the CR 54.02 finality language is meaningless here because that rule is limited to actions involving multiple parties or multiple claims,[6] which is not the case here. Even if we were to hold that CR 54.02 applied and could operate to make this interlocutory judgment final and appealable, "there must be a final adjudication upon one or more of the claims in litigation. The judgment must conclusively determine the rights of the parties in regard to that particular phase of the proceeding."[7] In this case, there has been no conclusive determination of the rights of any party.

Because we have determined that the Opinion and Order denying the motion for summary judgment is interlocutory and non-appealable at this time, we must dismiss the appeal. However, this does not mean that that circuit court's ruling regarding the applicable statute of limitations cannot be appealed once a final judgment has been entered, as that is a question of law.

For the foregoing reasons, the above-styled appeal is ORDERED DISMISSED this date.

ALL CONCUR.

---

3. *Ford Motor Credit Co. v. Hall*, Ky.App., 879 S.W.2d 487 (1994); *Transportation Cabinet, Bureau of Highways, Com. of Ky. v. Leneave*, Ky.App., 751 S.W.2d 36 (1988); *Gumm v. Combs*, Ky., 302 S.W.2d 616 (1957); *Battoe v. Beyer*, Ky., 285 S.W.2d 172 (1955); *Bell v. Harmon*, Ky., 284 S.W.2d 812 (1955).

4. 751 S.W.2d at 37.

5. *Id.*

6. *Hook v. Hook*, Ky., 563 S.W.2d 716 (1978).

7. *Hale v. Deaton*, Ky., 528 S.W.2d 719 (1975).