******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ESPINOSA and ROBINSON, Js., join, concurring in part and dissenting in part. I agree with and join parts I and VI[1] of the majority opinion[2] and agree with the majority's determination not to reach the issue of whether the award of damages was excessive. I express no opinion with respect to parts II, III and IV of the majority opinion.[3] I write separately because I disagree with the majority's conclusion in part V of its opinion that the thirty year limitation period prescribed by General Statutes § 52-577d applies to an action that sounds in negligence and recklessness.

The plain language of § 52-577d compels the conclusion that it applies only when an action is premised on intentional misconduct. In a case alleging negligence or recklessness, such as the present case, the two year limitation period in General Statutes § 52-584[4] applies. Not only does the plain language of § 52-577d support this construction, but the statutory scheme pertaining to statutes of limitations, the relevant legislative history, and case law from other jurisdictions also indicate that § 52-577d does not apply to actions alleging negligence or recklessness. I would thus conclude that, because the two year limitation period set forth in § 52-584 expired before the plaintiff commenced the present action, the matter is time barred.[5]

Section 52-577d provides in relevant part: "Notwithstanding the provisions of section 52-577, no action to recover damages for personal injury to a minor, including emotional distress, caused by sexual abuse . . . may be brought by such person later than thirty years from the date such person attains the age of majority." The majority acknowledges that "§ 52-577d expressly provides that [General Statutes] § 52-577, which applies to intentional torts, does not apply to claims involving personal injury to a minor caused by sexual abuse, [whereas] § 52-577d makes no mention of § 52-584, which applies to claims of personal injury arising from negligence or recklessness . . . ." Text accompanying footnote 20 of the majority opinion. The majority concludes, however, that the omission of § 52-584 "tends to create some ambiguity concerning the statute's scope . . . ." (Internal quotation marks omitted.) Part V of the majority opinion, quoting *Doe* v. *Indian Mountain School, Inc.*, 921 F. Supp. 82, 83 (D. Conn. 1995). In my view, the legislature's deliberate omission of § 52-584 demonstrates its intent to specify that § 52-577d applies to intentional conduct only. The plain language indicates that the legislature recognized a conflict between §§ 52-577 and 52-577d, making it necessary to clarify that an action for injuries caused by sexual abuse is subject to the thirty year statute of limitations in § 52-

577d. Perceiving no conflict between §§ 52-584 and 52-577d, however, the legislature saw no need to mention § 52-584. In other words, because § 52-577d applies to intentional conduct only, it would have been redundant to clarify that it does not apply to claims alleging negligence or recklessness. If the legislature had intended for these claims to be subject to § 52-577d, it would have provided, "[n]otwithstanding the provisions of sections 52-577 *and 52-584*" in § 52-577d. The fact that § 52-577 is a "catchall" provision that applies to intentional torts and other torts not specifically mentioned in other statutes does not negate the fact that the legislature, in drafting § 52-577d, perceived and resolved a conflict between §§ 52-577 and 52-577d, and perceived no such conflict between §§ 52-577d and 52-584.

Despite the deliberate omission of any reference to § 52-584 in § 52-577d, the majority concludes that negligence and recklessness claims are subject to the thirty year statute of limitations because "[t]he all-encompassing language of § 52-577d providing that *'no action* to recover damages for personal injury to a minor . . . caused by sexual abuse' . . . supports an interpretation that negligence and recklessness claims would also be subject to the thirty year statute of limitations." (Emphasis in original.) Part V of the majority opinion. The only way to arrive at this conclusion, however, is to disregard entirely the phrase "[n]otwithstanding the provisions of § 52-577" in § 52-577d. Moreover, this conclusion *creates* a conflict between §§ 52-577d and 52-584, when no such conflict exists under the plain statutory language. When § 52-577d is construed as written, it applies only when an action is predicated on conduct that amounts to sexual abuse, sexual assault or sexual exploitation, all of which require intentional conduct. Under this straightforward approach, there is no conflict with § 52-584, which applies only when an action is predicated on negligent or reckless conduct. Moreover, this approach is consistent with our long-standing history of construing statutes to avoid conflict when possible. E.g., *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 552, 46 A.3d 112 (2012). The majority's contrary approach not only ignores the legislature's resolution of the conflict between §§ 52-577d and 52-577, but creates a conflict between §§ 52-577d and 52-584 where the legislature saw none.

Additional language in § 52-577d compels the conclusion that it does not apply to actions sounding in negligence or recklessness. Section 52-577d provides that it applies to actions for damages "caused by" sexual abuse or sexual assault. The use of the narrow phrase "caused by," rather than more expansive language, indicates that § 52-577d applies only when the action arises from the perpetrator's intentional act that *caused* the sexual abuse. See *State ex rel. Heart of America Council* v. *McKenzie*, 484 S.W.3d 320, 327 (Mo. 2016) (construing statute of limitations for " 'any action to recover dam-

ages from injury . . . caused by childhood sexual abuse' " and rejecting argument that, because statute did not expressly exclude claims against nonperpetrators, such claims could be brought); see also *Walker* v. *Barrett*, 650 F.3d 1198, 1209 (8th Cir. 2011) (rejecting argument that claim could be brought against nonperpetrator when statute of limitations governing " '[a]ny action to recover damages from injury . . . caused by childhood sexual abuse,' " by its terms, suggested that nonperpetrator could not be held liable).

The majority offers no explanation for how the phrase "caused by" includes negligent or reckless conduct but concludes instead that, "[i]f the legislature had intended to limit the application of § 52-577d to claims against perpetrators . . . it could have simply said so." Text accompanying footnote 21 of the majority opinion. In my view, the legislature *did* say so by indicating that § 52-577d applies to injuries "caused by" sexual assault and by expressly incorporating a reference to § 52-577 while omitting any reference to § 52-584. Moreover, one can argue just as easily that, if the legislature had intended to extend the application of § 52-577d to nonperpetrators, it could have said so. Finally, I am not persuaded by the majority's conclusion that § 52-577d must apply to negligent and reckless conduct because it applies to tort claims for emotional distress. Because such emotional distress claims can be premised on intentional conduct or negligent conduct, a common-sense reading of § 52-577d suggests that it applies to claims for emotional distress premised on intentional conduct but does not apply to claims premised on negligent conduct.

Not only does the plain language of § 52-577d compel the conclusion that it applies only to actions premised on intentional conduct, but this conclusion is also consistent with the statutory framework pertaining to statutes of limitations set forth in chapter 926 of the General Statutes. This chapter, which establishes limitation periods for various types of actions, contains separate provisions for actions premised on intentional torts and all torts not specifically mentioned in other statutes; see General Statutes § 52-577; see also *Collens* v. *New Canaan Water Co.*, 155 Conn. 477, 491, 234 A.2d 825 (1967); actions premised on specific intentional torts; see, e.g., General Statutes §§ 52-577b and 52-577c; and actions premised on negligence or recklessness. See General Statutes § 52-584. It is well established that "[t]he enactment of [s]tatutes limiting the time within which an action may be brought are the result of a legitimate legislative determination which balances the rights and duties of competing groups." (Internal quotation marks omitted.) *St. Paul Travelers Co.* v. *Kuehl*, 299 Conn. 800, 809, 12 A.3d 852 (2011). The legislature, recognizing the distinctions between intentional torts in general, specific intentional torts, and acts of negligence or recklessness, set different time periods for

each type of action. Thus, under § 52-577, a plaintiff injured as a result of an intentional tort has three years from the date of the act or omission to commence an action, whereas, under § 52-584, a plaintiff injured by negligent or reckless conduct must bring the action within two years of the date when the injury is first sustained or discovered. Under General Statutes § 52-577e, there is no limitation on bringing an action when an injury has been caused by sexual assault and the party legally at fault for the injury has been convicted of sexual assault. When we consider § 52-577d in the context of this scheme, as mandated by General Statutes § 1-2z, it becomes clear that the thirty year limitation period in § 52-577d applies only to intentional conduct. To interpret the provision to apply to both intentional and negligent conduct frustrates the legislature's distinctive treatment of intentional, reckless and negligent conduct, and contravenes our mandate to interpret statutes to avoid, rather than to create, conflict.

The legislative history also supports the conclusion that § 52-577d does not apply to actions sounding in negligence. The majority observes that the legislation was intended "to afford a plaintiff sufficient time to recall and come to terms with traumatic childhood events before he or she must take action . . . ." (Internal quotation marks omitted.) Part V of the majority opinion, quoting *Roberts* v. *Caton*, 224 Conn. 483, 493, 619 A.2d 844 (1993). Although I agree with this sentiment, it does not establish that the legislature intended for § 52-577d to apply to nonperpetrators. In fact, as the defendant emphasizes in its brief, a key focus of statutory debate was on the *perpetrator* of the sexual abuse. Representative Richard D. Tulisano, introducing the legislation on the floor of the House of Representatives, explained that it was intended to toll the statute of limitations so that "a minor who has been victimized by sexual assault could bring an action against *the offender*—a civil action against *the offender*." (Emphasis added.) 29 H.R. Proc., Pt. 12, 1986 Sess., p. 4388. After Representative Tulisano explained that "[m]ost of these incidents occur with caretakers, that is a parent, stepparent, uncles, individuals with whom they've been, boyfriends of their mothers . . . [a]nd generally it begins to occur . . . in the teen years"; 29 H.R. Proc., Pt. 17, 1986 Sess., p. 6328; Representative William L. Wollenberg expressed his concern that victims would "go to an attorney and . . . file a civil suit against this parent or against the uncle or against the caretaker. . . . They may get a judgment . . . [but] it probably would be an empty judgment." Id., p. 6337. These remarks establish that the context for the debate was whether the legislation made sense when victims might stand to recover little *from perpetrators*.

Representative Michael D. Rybak first raised the issue of whether the proposed legislation would apply to a

nonperpetrator by asking whether passage of an amendment to the proposed legislation would mean that, if an employee of a day care center committed a sexual assault, "[d]oes [liability] fall on the employee, or does it fall back on the day care center?" Id., p. 6356. In response, Representative Tulisano responded: "I suppose it's the institution that maintains its liability, and the individual would be liable for the incident, the individual who caused the act to occur." Id. Representative Tulisano then further explained: "[T]his is [wilful] and wanton. It's an intentional act that we're talking about here under this particular proposal. So the individual would in fact be responsible personally. The day care center, I suppose as an institution may continue to have liability, but [its] policy probably will exclude [wilful] and [wanton] acts anyway, so as an institution, [it] will not be liable. And of course, the boards of directors are already protected . . . so it really lies on the person who did the act for the most part, the offender." Id., p. 6357. This exchange supports two conclusions. First, it indicates that the proposal's sponsors had not really contemplated whether the proposed legislation would apply to anyone other than offenders. Second, it indicates that the legislators' underlying assumption was that the proposal applied to offenders only. This exchange simply cannot be interpreted to support a determination that the legislature intended for § 52-577d to apply to nonperpetrators.

Moreover, when the time frame in § 52-577d was amended further by No. 91-240 of the 1991 Public Acts, Representative Tulisano again introduced the legislation by explaining that "[a] number of years ago Connecticut was among the first states to recognize that minor victims of sexual assault often do not have the independence and the opportunity to bring civil actions against the *perpetrators* of crimes against them and at that time Connecticut, in the beginning, enacted its current statute, one of the first in the nation, and the purpose of it is to give individuals an opportunity to do something for themselves." (Emphasis added.) 34 H.R. Proc., Pt. 13, 1991 Sess., p. 4705. The legislative debates establish the legislature's intent to provide sexual assault victims additional time to recall and take action against the perpetrators of sexual abuse. There is nothing in the legislative history, however, to indicate that the proposal would also apply to nonperpetrators.

Turning to the case law, I am not persuaded by the majority's reliance on nonbinding authority from other jurisdictions as a central factor in construing a Connecticut statute. In particular, the majority relies on *Almonte* v. *New York Medical College*, 851 F. Supp. 34 (D. Conn. 1994), in which the United States District Court for the District of Connecticut, after acknowledging that the Connecticut Supreme Court had never decided whether § 52-577d applies to a claim sounding in negligence; see id., 37; concluded that § 52-577d, rather than § 52-584,

applied in a negligence action. Id., 39. Not only does the District Court's decision to decide a question of Connecticut law contravene our long-standing procedure for encouraging federal courts to certify questions of law to the Connecticut Supreme Court for decision; see Practice Book (1978–1997) § 4168; but it effectively forestalls our independent consideration of the matter. Although the analysis in *Almonte* was not binding precedent in Connecticut state courts, it became the foundation for nearly all of the subsequent trial court decisions on this issue and has now become the foundation for the present decision. See footnote 24 of the majority opinion (citing cases); cf. *Doe* v. *Flanigan*, Superior Court, judicial district of Waterbury, Docket No. UWY-CV-09-501462-S (January 9, 2015) (59 Conn. L. Rptr. 586) (engaging in little analysis); *Truex* v. *Rogers*, Superior Court, judicial district of Hartford, Docket No. CV-04-0833129-S (May 10, 2006) (41 Conn. L. Rptr. 330) (relying on *See* v. *Bridgeport Roman Catholic Diocesan Corp.*, Superior Court, judicial district of Fairfield, Docket No. CV-93-0300948-S [September 13, 1993] [10 Conn. L. Rptr. 51]). In my view, the routine reliance on *Almonte* undercuts the persuasive value of the majority's contention that, "over the last twenty-two years, there have been numerous decisions in Connecticut courts holding that negligence claims against nonperpetrators were subject to the extended statute of limitations contained in § 52-577d."[6] Text accompanying footnote 24 of the majority opinion.

Most important, I do not find the reasoning in *Almonte* persuasive. The District Court takes no notice of the legislature's statement that § 52-577d applies in place of § 52-577 and fails to consider § 52-577d in the context of related statutes, such as § 52-577e. I also disagree with the District Court's conclusion that, because § 52-577d is focused on providing victims with a recovery for a particular type of harm and is not expressly limited to actions brought against perpetrators, it applies in negligence actions against nonperpetrators. See *Almonte* v. *New York Medical College*, supra, 851 F. Supp. 37–39. The fact that § 52-577d serves to allow recovery for victims of sexual abuse does not mean that § 52-577d is intended to permit recovery *from nonperpetrators*. In fact, there is no indication in the statutory language or the legislative history that § 52-577d was intended to permit recovery from a person who did not engage in an intentional act and did not cause the sexual abuse.

Finally, although the majority refers to additional cases from other jurisdictions; see footnote 21 of the majority opinion; these cases offer little guidance to this court because they construe statutes that contain distinct wording and contexts. To the extent that these cases offer guidance in assessing the meaning of § 52-577d in the context of our unique statutory scheme; see General Statutes § 1-2z; they merely indicate that courts

of other jurisdictions have taken different approaches in interpreting similar provisions. As the majority acknowledges, a number of courts have interpreted statutes similar to § 52-577d to apply only to individuals who perpetrated the sexual abuse or sexual assault.[7] I am not persuaded by the majority's attempt to distinguish these cases on the ground that the statutes at issue incorporated a definition of sexual assault that referred to intentional conduct committed by the perpetrator or included language concerning conduct committed by the perpetrator. See footnote 21 of the majority opinion. As I discussed previously in this opinion, § 52-577d limits its application to intentional conduct by expressly providing that it applies in place of the intentional tort limitation provision of § 52-577, and not in place of the negligence or recklessness limitation provision of § 52-584. Moreover, to the extent that the cases in other jurisdictions have addressed a definition of abuse that requires intentional behavior, General Statutes § 46b-120 (7) provides in relevant part that "[a] child or youth may be found 'abused' who (A) has been inflicted with physical injury or injuries other than by accidental means . . . ."

Following a careful review of the plain language of § 52-577d, the statutory framework, the legislative history and relevant case law, I would conclude that § 52-577d does not apply to actions sounding in negligence or recklessness and does not apply in an action against entities or individuals who did not commit the sexual assault. I would therefore conclude that the plaintiff's action is time barred by § 52-584 because it was commenced more than two years after the plaintiff's injury was first sustained or discovered.

[1] Specifically, I agree that the trial court (1) improperly denied the request of the named defendant, The Boy Scouts of America Corporation, to charge the jury that it could not be held liable for negligence unless the plaintiff, John Doe, proved that the defendant's conduct created or increased the risk that the plaintiff would be harmed by Siegfried Hepp, and (2) incorrectly determined that the statute of limitations set forth in General Statutes § 52-577d applied to the plaintiff's claim brought pursuant to the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq.

[2] Chief Justice Rogers' opinion, which is joined by Judge Sheldon, is technically not a majority opinion but, rather, an opinion announcing the judgment. In the interest of simplicity, we refer to that opinion as the majority opinion and to Chief Justice Rogers and Judge Sheldon collectively as the majority.

[3] I express no opinion with respect to whether (1) the named defendant, The Boy Scouts of America Corporation, had a duty to protect the plaintiff, John Doe, from Siegfried Hepp's criminal or intentional misconduct, (2) the plaintiff presented insufficient evidence to support a finding that the defendant's conduct had caused the plaintiff's injuries, and (3) the plaintiff presented insufficient evidence to support a finding that the defendant had been reckless.

[4] See part V of the majority opinion for the text of § 52-584.

[5] Based on this conclusion, Justice Espinosa, Justice Robinson and I would reverse the trial court's judgment and remand the case with direction to render judgment for the named defendant, The Boy Scouts of America Corporation. The justices in the majority opinion and the other concurrence and dissent, however, have reached divergent conclusions about the correct disposition of the case. Chief Justice Rogers and Judge Sheldon, who comprise the majority opinion, would reverse the trial court's judgment and remand the case for a new trial. Justices Eveleigh and McDonald, who

comprise the other concurrence and dissent, would affirm the trial court's judgment. If we were to adhere to our respective positions, there would be no controlling judgment from this court. In these circumstances, and given that a majority of the justices of the court have disagreed with the position that Justice Espinosa, Justice Robinson and I have taken with respect to the statute of limitations issue, we have considered the merits of the defendant's instructional error claim and agree with and join part I of the majority opinion. We therefore agree that the judgment of the trial court must be reversed and the case remanded for a new trial.

[6] Two Superior Court cases addressed this issue before *Almonte* was decided in 1994. *See* v. *Bridgeport Roman Catholic Diocesan Corp.*, supra, 10 Conn. L. Rptr. 51 (indicating that § 52-577d applies to perpetrators and nonperpetrators); *Ashlaw* v. *Booth*, Superior Court, judicial district of Windham, Docket No. CV-90-0045313-S (August 9, 1994) (§ 52-584, not § 52-577d, applied in negligence action against nonperpetrator).

[7] See, e.g., *Walker* v. *Barrett*, supra, 650 F.3d 1209 ("[a]ny action to recover damages from injury . . . caused by childhood sexual abuse" [internal quotation marks omitted]); *Debbie Reynolds Professional Rehearsal Studios* v. *Superior Court*, 25 Cal. App. 4th 222, 230 n.3, 30 Cal. Rptr. 2d 514 (1994) ("any civil action for recovery of damages suffered as a result of childhood sexual abuse" [internal quotation marks omitted]); *Sandoval* v. *Archdiocese*, 8 P.3d 598, 600 (Colo. App. 2000) ("any civil action based on . . . a sexual offense against a child" [internal quotation marks omitted]); *Knaus* v. *Great Crossings Baptist Church, Inc.*, Kentucky Court of Appeals, Docket No. 2009-CA-000141-MR (February 12, 2010) ("[a]ction relating to childhood sexual abuse or childhood sexual assault" [internal quotation marks omitted]), review denied, Kentucky Supreme Court (October 13, 2010); *State ex rel. Heart of America Council* v. *McKenzie*, supra, 484 S.W.3d 327 ("any action to recover damages from injury . . . caused by childhood sexual abuse" [internal quotation marks omitted]); *Kelly* v. *Marcantonio*, 678 A.2d 873, 875 (R.I. 1996) ("[an] action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse" [internal quotation marks omitted]); *Bernie* v. *Blue Cloud Abbey*, 821 N.W.2d 224, 226 (S.D. 2012) ("[a]ny civil action based on intentional conduct brought by any person for recovery of damages for injury suffered as a result of childhood sexual abuse" [internal quotation marks omitted]).